STATE of Missouri, Respondent,

v.

Gary M. MORRIS, Appellant.

No. WD 36645.

Missouri Court of Appeals,
Western District.

July 8, 1986.

Lee M. Nation, Kansas City, for appellant.

William L. Webster, Atty. Gen. (John M. Morris, Asst. Atty. Gen., of counsel), Jefferson City, for respondent.

Before MANFORD, P.J., and PRITCHARD and TURNAGE, JJ.

PRITCHARD, Judge.

By the verdict of a jury appellant was found guilty of stealing. As a persistent offender, he was sentenced to imprisonment in the Department of Corrections for a term of fifteen years.

The sufficiency of the evidence to sustain the conviction is not questioned. Certain evidence and trial events will be stated in connection with appellant's claims of error.

Sandra Wendell Hacker was the office manager accountant for the Witherspoon Commission Company at the stockyards in Kansas City, Missouri. On January 10, 1984, a man came into the office and told Ms. Hacker to hold the check for 15 head of cattle which had been consigned for sale by Witherspoon on a drive-in ticket which had the name of Mark Bracewell on it. The man who told her to hold the check picked it up on January 11, 1984. Prior to Ms. Hacker's testimony, at a bench conference, this happened: "MR. NATION: It is my understanding from Mr. Pursley's opening statement that she is going to identify the defendant. MR. PURSLEY: (Indicating.) MR. NATION: Oh, she is not? Okay, all right. MR. PURSLEY: She is going to testify—MR. NATION: Of the check? MR. PURSLEY: She is going

to testify that this sale occurred at the Kansas City stockyards and later a witness will connect this name and this individual with the defendant. THE COURT: Okay. MR. NATION: Okay, I don't have any objection. I was confused." Then Ms. Hacker testified: "Q. Could you identify Mark Bracewell: A. Yes, sir. Q. Is this Mark Bracewell? A. Yes, sir." [obviously meaning appellant.]

Then, at a bench conference, appellant moved to suppress the one-on-one identification, and asked for a mistrial on the ground that it was improper to bring a witness into court and have them identify a defendant in court on a one-on-one show-up. It was argued to the trial court that the prosecutor advised two minutes before Ms. Hacker was put on the stand that she would not identify appellant, and if counsel had known there was a possibility that the prosecutor was going to ask her to identify him, he would have asked for a recess and had "a line-up or something to where there would have been a reliable way for her to make identification." The prosecutor advised the court that it was a surprise to him, that it was his understanding that Mark Bracewell is another individual, and that is why he asked her because he thought she would say no. He thought that she believed Mark Bracewell was another individual because he had a witness who was going to testify that he is another individual. [Emil Holman, an accomplice of appellant who helped to load some of the stolen cattle, testified that the name Mark Bracewell was on an identification he found on a bar room floor, and he gave it to appellant about 1980, who had it up to the time he took the cattle and had the check made out in Mark Bracewell's name.] The trial court overruled the motion for mistrial.

In his Point I, appellant contends that the trial court erred in overruling his motions to suppress and for mistrial, and in failing to hold a hearing on the identification, that was the result of a one-on-one in-court show up and was in violation of due process of law.

There was, of course, no lineup conducted in this case, so there is no question presented as to any undue suggestiveness of any pretrial opportunity of Ms. Hacker to make an identification. Ms. Hacker testified that the person whose name was on the drivein ticket as Mark Bracewell came to her office on two occasions—first to request that the check for the cattle be held, and second, when he came in to pick up the check the next day. The length of time that she observed him and other circumstances surrounding those confrontations were not developed on her cross-examination by appellant which might show the possibility of mistake. There is no record that she was interviewed or deposed by appellant's counsel although she was endorsed by amendment, on the information as a witness. On cross-examination, it was brought out that she testified earlier in the case at a preliminary hearing, but she thought she was not asked to identify Gary Morris as Mark Bracewell—she did not really remember. She thought, however, that she was asked if she could identify Mark Bracewell at that time, and her answer was: "I said it had been quite some time but I thought I could, the man who came in our office."

■ The fact that Ms. Hacker did make an in-court identification of appellant as Mark Bracewell obviously came as a surprise to both parties. The prosecutor thought that either she could not, or would not, make the identification based upon his belief that there was another witness who would tie appellant to the name Mark Bracewell. That witness was Emil Holman, who testified that Mark Bracewell's name came from an identification he found and which he turned over to appellant, and surely the prosecutor would know of that fact as Holman was a witness for the state. On the basis of all these facts, which were before the court, it cannot be convicted of error in overruling the motion to suppress, the motion for mistrial, or in failing to hold a hearing on the identification. Nothing appears which would render Ms. Hacker's testimony inadmissible, and it was properly

before the jury on the identification issue. Point I is overruled.

Point II is: "The trial court erred in overruling appellant's motion for mistrial when evidence of other crimes was introduced insofar as said evidence was irrelevant, immaterial, highly prejudicial, and thus impermissible." The matter came up during the direct examination of deputy sheriff Edward A. Rapps, who investigated the theft complaint on January 10, 1984. Rapps was asked, "Q. All right, now, you're aware of most of the crime reports in the area, I suppose? A. Yes, I am. Q. The complaints, were there any other cattle theft in the area? MR. NATION: Objection, irrelevant. THE COURT: Well, that objection is sustained. MR. PURSLEY: Your Honor, I think it will become relevant." In a bench conference, the prosecutor told the court that a witness went with appellant to Bates County to look at some cattle which appellant told him he had stolen, and he was seeking to establish only that theft. Appellant withdrew his objection, and the prosecutor stated it was his belief that Rapps would say "no" to the question. Rapps, however, testified that there were other thefts in the area other than for which appellant was charged. After further colloquy before the bench, Rapps testified before the jury that the other cattle theft did not happen on January 9 or 10. The court asked Rapps when the other cattle theft occurred, and he answered it was approximately two to three weeks before. Rapps did not mention appellant's name in connection with the prior theft. It is clear under the case law that evidence of other crimes is inadmissible [with some exceptions, absence of mistake, common scheme or plan, identity of the accused, and motive. *State v. Moss*, 627 S.W.2d 667, 668 [2, 3] (Mo.App.1982) ] as evidence of an accused's guilt of a crime charged. *State v. Graham*, 641 S.W.2d 102, 105[2–4] (Mo. banc 1982). Although the evidence of another cattle theft about two weeks before the one with which appellant was charged is irrelevant, in no way was he connected with that prior theft. See *State v. Laws*, 668 S.W.2d 234, 237[3]

(Mo.App.1984), where it was said, "The rule excluding evidence of other crimes does not apply where there is no evidence linking the accused with the other crimes. *State v. Hurst*, 612 S.W.2d 846, 855[29–33] (Mo. App.1981)." No prejudice to appellant is apparent. No other relief other than the drastic remedy of mistrial was requested. Point II is overruled.

On cross-examination of accomplice, Emil Holman, he was asked: "Q. Now, learning from your mistakes and owing to the fact that you have admitted a burglary, a cow theft in Texas, and a cattle theft here, is it safe to say there are other crimes that you have committed for which you have not been caught?" An objection was made and sustained. The court then explained its ruling in that it did not intend to limit counsel in going into prior convictions or anything. And "[T]hat I just want you to understand that was not the import of my ruling. The question, in its form, was improper impeachment. I will not restrict you concerning prior convictions. I have never intended to." The state seems to concede, citing *Neal v. State*, 669 S.W.2d 254, 262[11, 12] (Mo.App.1984), that the question was proper, on the issue of credibility. That case said, "In Missouri, one seeking to impeach a witness may ask him whether he has committed a crime, or whether he has admitted committing a crime. (Citing cases.) Such inquiry is permissible even though the witness has not been convicted of a crime (citing case)." Even if the sustaining of the objection was an abuse of discretion and therefore error, it is harmless. The evidence of appellant's guilt in stealing the cattle is overwhelming in these respects. Emil Holman was with appellant when he stole the first cattle, and appellant told him that he had stolen cattle from the same victims on a subsequent occasion. Emil accompanied appellant to the Kansas City Stockyards where he sold some cattle. There was evidence that appellant sold other stolen cattle at an Odessa, Missouri, sale barn. There was evidence that the paint of a trailer left on a board at the victims' barn matched that of

one owned by appellant, which was traced to him. So, even if there was error in excluding the cross-examination question, it was harmless. Point III, raising the cross-examination issue, is overruled.

In his last Point IV, appellant combines several matters. First, that the prosecutor argued facts that he knew not to be true. [In the brief, it is stated that the closing arguments would be supplied by supplemental transcript but they have not been received.] The brief states that the state argued Sandra Hacker's identification to the jury. She, of course, identified appellant as Mark Bracewell, but the facts, showing a surprise to both parties are above set forth. State's counsel was entitled to argue the facts that were properly in evidence, including that appellant represented himself to be Mark Bracewell. The matter of Ms. Hacker's "one-on-one" show-up, identifying appellant, is also covered above. The matter of Rapp's testimony of other cattle thefts is also ruled above and held not to be prejudicial to appellant because he was not linked to other thefts. Point IV is overruled.

The judgment is affirmed.

All concur.